And we'll proceed with the next case on the docket, it's United States of America v. Tommy Findley. And Tracey Dryspill, Ms. Dryspill is here for Findley. Andrea Hoffman is here for the United States. And Ms. Dryspill, are you ready to proceed? Yes, Your Honor, thank you. May it please the court, Assistant Federal Public Defender Tracey Dryspill on behalf of Appellant Tommy Findley. I'd like to spend most of my time today on the suppression issue because I do believe that it is dispositive and requires that this case be sent back. I would also, however, like to spend a few minutes on both of the constructive amendment arguments. And I will rest on the briefs with respect to the sentencing issues unless the court has questions. I think there are several problems with the suppression with the search warrant in this case, but the most glaring is that Detective Ramos omitted known material information, which was adverse to the finding of probable cause from the warrant affidavit. And there are three prongs to this argument. The first is that Ramos omitted known material information. The second is that that information would have precluded a finding of probable cause. And the third is that the circumstantial evidence strongly shows that the omission was knowingly and willfully or at least made with reckless disregard for the truth or falsity of the affidavit. The fight that Mr. Finley had had with his daughter a few weeks at most before she went to the police was absolutely material. And it was clearly, it was material as a matter of common sense, as a matter of federal law, and most clearly as a matter of Florida law. Under Florida law, in the wake of Illinois versus Gates, which kind of merged the two prongs of the credibility assessment in Aguilar-Spinelli, the court established the citizen informant doctrine, which states that someone who is a citizen informant is considered to be at the higher end of the credibility spectrum and may require less corroboration. But there are factors that go into determining whether somebody meets that criteria. The first is that it is motivated by a desire to further justice and lacks a motive to incriminate and to lie to incriminate the accused. So the government last week submitted with D.B. versus State as a supplemental authority, and that case absolutely confirmed that the motive to lie is a material factor in the probable cause affidavit. The court wrote, despite being aware that D.C. was purportedly a victim of sexual abuse, with a possibly an ulterior motive, the trial judge nonetheless determined that the complainant was a citizen informant. And so right there, the court, right up to the end, right off the bat is acknowledging the materiality. In that case, however, the omissions from the affidavit had nothing to do with motive. It was rather that after the detective had begun investigating, which didn't happen in this case, and had seen some corroborating evidence, he asked the complainant or the informant to try and find more evidence in the home of the accused, which the witness was unable to find. That was what was omitted. It had nothing to do with the motive. And importantly, the detective didn't just take the witness's statement at face value when he came in. There was initial conversation. The witness then returned and told him about this box of photos of young boys in the defendant's home. He then went to the department and saw the box of pictures of the little boys, even though they weren't necessarily child pornography. And under those circumstances, the magistrate could properly infer that this had been something that the detective felt the credibility of the complainant was sufficient to justify executing a warrant. Okay, so detective, this is Judge Wilson. Detective Ramos, before seeking the search warrant, was aware that NF had had a fight with Finley. Is that right? And it was reckless to leave that out of the request for the application for a search warrant, is that right? That's correct, your honor. That is the argument. And it- I guess the concern was even leaving it out, would it, would that, I mean, if he'd put it in there, would that negate, can you make an argument that that would negate probable cause? Absolutely, because under Florida law- Given all the other evidence? I mean, she was an eyewitness. NF actually saw, she told detective Ramos that she saw the pornography on the computer and she made detailed allegations about Mr. Finley's prior conduct. Wouldn't all that be enough? Correct, your honor. No, because there was no corroboration and there was no basis for the court to find that she was a reliable witness. And that's the problem. And in the Roper case from Florida's 5th District Court, the court didn't even reach the fact that there had been an omission that this girlfriend had actually come in to complain that her boyfriend had beaten her up that morning. The fact that there was not enough sufficient evidence about her credibility was sufficient to, for the Florida 5th DCA, not only to invalidate the warrants, but to say that we on good faith could not apply. Because it is so clear that if the, if an officer under Florida law does not establish to the issuing magistrate that this is an uninterested party that has no basis, no possible motive to fabricate, then there must be additional corroboration. And that is what Dial and Roper stand for. And- Ms. Dressel, this is Judge Marcus. The magistrate judge made the observation that the omission could just as easily have cut the other way because that additional fact would have actually been corroborative of the allegations that the father was abusive. Well, there are two- In other words, the evidence itself was a two-edged sword and that if it had been included, on one level, it would have corroborated and strengthened the thrust of the allegation. Even if you can argue, on the other hand, that it might provide a motive not to believe the affiant. Well, I disagree as a factual matter that physical abuse and creating pictures of a sexual relationship with an underage girl are the same. But more importantly, the Florida courts have been very clear on that. And under Florida law, it absolutely would have undermined the daughter's credibility and required further corroboration, which the detectives did not make any attempt to get in this case. I think even if you put aside the Frank violation, you've got a problem here. Because what you have is the statement of a witness, and we have to remember, she had gotten into this fight, which wasn't in the affidavit, but she'd flown across the country. She was living with her mother, who was Mr. Finley's ex-wife, who said negative comments about Mr. Finley on the phone to Officer Rivera. So you have all these factors suggesting some kind of vindictive motive. Officer Ramos, and I just wanna make this very clear, Officer Ramos is not just a reasonable officer, which is the Objective Leon standard. He's the guy who teaches investigations in Palm Beach County Police Department. So if anyone in the Palm Beach County Police Department knows that he had to include either a statement that she was an uninterested, unbiased observer, or the fact giving rise to her potential motive to lie, it was Detective Ramos. And that's what gets us to the circumstantial evidence of this being knowing and voluntary. The Magistrate's finding that this would have contributed to probable cause was absolutely incorrect. It was incorrect under the fourth CCA law. It was absolutely incorrect under multiple Florida cases cited in the brief, and even several federal courts have acknowledged that this should have been disclosed to the Magistrate. What standard did we use? Ms. Dressel, this is Judge Marcus again. Let's assume that the appearance here were federal officers rather than state or local cops. And the federal officer had omitted the reference to this other act, which arguably went to motive to lie. What standard would we use? Would we use the same standard that the Florida courts had employed? And if the answer is no, in this federal court, what standard is appropriate for us? Well, I'm not sure I understand if the court is referring to the standard or the test. I think the Frank standard is the same. The question is, was it a known or a recognized- No question, the Frank standard is plainly the same, but it's the significance of the omission and the lack of corroborative evidence. There's no question that in the federal courts, a single statement from an eyewitness is enough, even in the absence of any corroboration. That may not be true in a state forum. And so I'm simply asking, how do we come at this problem? So, well, there's, okay, again, taking aside the fact that this was absolutely material under federal law, if we're pretending that he got the witness from a federal judge, which is what I think the court is understanding, hypothetically, if this fact, if this officer Ramos had gone to a federal judge with these facts, he still has nothing to corroborate the witness's statement. And that is still a huge problem even under Illinois v. Gates. There needs to be some corroboration. And he still omitted a fact which many, many judges would find to be material to refuting probable cause. And Detective Ramos was asked on the stand because there was this allegation that the daughter had previously made an unsubstantiated allegation of sexual abuse against a teacher in Boynton Beach. And that was conceded that at least that happened. Two minutes, please, two minutes. Okay, I'll be very quick. Ramos admitted on the stand that if he had been the lead detective, he would have checked a database that the Palm Beach County Police keep to see if there had been any prior allegations that might have checked into her credibility and didn't even do that. There was zero attempt at corroboration here. And that's the problem, even without the clear materiality under Florida law. I really do wanna hit the constructive amendment arguments very, very briefly. With respect, I'm sorry, the other thing about credibility, though, before I move on that I did not actually highlight in the reply brief that I should have, all these other cases that the government is citing to say that a single witness, and even Your Honor pointed out that a single witness might supply a probable cause. In those cases, the detective himself had the opportunity to observe the demeanor of the complainant. Detective Ramos never even spoke to the daughter. He is going on listening to a recording when she was interviewed by Detective Rivera, and he even admitted he would have been more thorough than Detective Rivera if it had been his case. And this conversation with Detective Edwards in New Jersey that he never even read it. I think that I will just, with respect to count two, I wanted to point out, the government, I'm sorry, the Defense Council argued there was a constructive amendment on count one because of the omission of the word youth. And what he was really arguing is that the court was changing what the statutory terms mean. And so going through last night, preparing for oral argument, I realized that there's another statute that provides an age 16 as the federal age of consent. And so it doesn't make any sense that Congress would impose a 15-year mandatory minimum of taking a picture of anyone under 18 engaged in sexual activity when there's going to be a large group of people for whom that is otherwise legal, but for the presence of an iPhone. And so I really think that supports the argument that youth under 2251A should be required to include an element of coercive behavior. And finally, with respect to count two. Time has expired. Okay, may I just use 30 seconds of my rebuttal? You're right, Diana. Thank you. The government said in its brief that it found my argument on count two hard to follow. And so I just wanna make sure that I have the opportunity to make sure it's clear to the court. And that is that both the statute and the indictment with regard to the possession count tie the interstate nexus to the visual depiction. It is the visual depictions that have to either have been produced with materials that traveled in interstate commerce or moved interstate commerce themselves. The government in this case- Was this a challenge that was raised in the district court? It was not, your honor. But even if it is plain error, under Madden, the prejudice does not go to whether or not there's sufficient evidence for the charge. The prejudice goes to whether the jury might've convicted on a charge, not in the indictment. And in this case, the jury was explicitly directed to look at a completely different charge other than the one provided by the statute and return to the grand jury. All right, thank you, Ms. Draceville. You reserved some time for rebuttal. And we'll hear from Ms. Hoffman on behalf of the government. Excuse me, Judge Wilson. Andrea Hoffman is no longer on the line. I think she's having phone issues. All right, are you gonna attempt to put her back on the line? Your honors, I am back on the line, and I apologize. I do not know what happened, I just vanished. I did not end up hearing my opposing counsel's arguments about constructive amendment. I will address that as I know it, but not based on what she said, and I apologize, your honors. Andrea Hoffman here on behalf of the United States. I would like to start with the search warrant issue as well. The validity of the search warrant issue in this case is a question of federal, not state law, as established in U.S. v. Gilbert, which we submitted to the court recently. Can you speak a little louder? Yes, sir. If the district court's adoption of the magistrate's R&R is clearly not erroneous, because there were at least seven primary factors that established probable cause. And if the court will give me just a moment, I'd like to go through those seven factors that set forth it because the facts are so critical in this case. The information, the pornography found by the NF was found within three months of her reporting. As this court noted to my opposing counsel, she provided detailed information about who, how, where, what, when, the kinds of pornography from naked pictures to oral sex. She identified the players, the participants, the locations that it occurred. She identified the age of the victim in this. She was able to identify the device that she located the information on and where she found it in her home. She was able to give detailed descriptions of the other devices maintained in the home, particularly the various hard drives. She told several people about this, including a friend and a sample and a cousin, and she confronted the victim about it, who initially denied that any activity had occurred, then acknowledged that it had occurred and that she was drunk and that it had only occurred one time. This evidence provided the court spaces to find probable cause because it is, as this court noted a minute ago, firsthand knowledge voluntarily given by a witness who's willing to fully identify herself and involve detailed reporting of the events. She's subject to allegations of perjury at two different police departments in two different states. Three seasoned police officers found her credible having viewed her testimony, had spoken with her one face-to-face and two who listened to her through the recordings or a telephone call, neither of whom had first face-to-face interactions with her. And she was subject to reprisal from her father because she's fully identified as a victim. Now, I get that defense counsel wants us to focus on what's not included as opposed to what's included, but what's included is very strong. Now, the excluded issues, there are a handful of them. The fight is the primary one that defense counsel focused on so I will focus on it as well. As this court noted, had that information been included, it would not have been included in simply this witness has a reason for bias. It would have included the descriptions of her father choking her to practically unconsciousness, only stopping when he gets pulled off of her by another adult and then continuing in a rage that should be shattering things in the house. That information would absolutely have aided as the magistrate court reasonably found in the finding of probable cause. In addition, there is one factual misstatement that I would like to clarify for the court in the magistrate's order. There is an implication that the witness had been unable to find images, the pornographic images in the home of her father in the last 30 days. And if the courts review the transcripts of the two interviews that are at 17, one and 20-1 in the record, in neither place did she say she couldn't find the images. She had a brief period of time where one of the hard drives was no longer visible, but it came back into where she could find it readily before she left. She didn't check it again to see whether the pornography had been removed from the device. So there was no reason, there's no basis to say that any of the pornographic materials had been destroyed. And as we subsequently know through the trial, none of it had been destroyed. Nor is there a basis for a determination that there's a lack of materiality established in that this information is material. The court's decision in U.S. versus Saras, I think is how it's said, S-A-R-A-S, at 575 Fed Third 1191. In that case, the court found it not material that the victim said it only happened once. Anytime it happens, it's a crime. So that happened to have been in this one, but it wouldn't have been material. The court found it wasn't material that the victim didn't know the dates of the abuse, and it wasn't material that it was, quote, a family camera. So the issues that they're trying to assert about the materiality and the various omissions, the more omissions that they stated in their brief, simply are not persuasive in light of this court's ruling in U.S. versus. This is Judge Wilson. Doesn't Florida law require corroboration of a witness's statement to support a search warrant, Dowell versus Florida? I do not believe it does, Your Honor. Dowell versus Florida is a fairly old case. It's been cited or followed less than three times in Florida law. The D, which is considerably more recent, 2012 case, addresses both Roper and Dowell, and sets both of them aside, and finds that it did not need citizen cooperation, that it cared about whether the witness had come forward voluntarily, whether they were prepared to fully identify themselves, whether it was firsthand or not, the kind of detail that they could provide, and whether they were, so therefore, subject both to prosecution for perjury and or false statements, and whether it was, they were subject to the reprisal from the person being accused based on their conduct, all of which is true in this case. So even if one turns to Florida law, which under Gilbert, I would suggest to you that this court should not do, there is not this straight line rule that defense counsel is arguing. The D is a much stronger basis, more directly on facts. If Detective Ramos had sought corroboration for NS statements, he might've discovered that she previously filed sexual abuse charges against the teacher that were unsubstantiated. Your Honor, that, the unsubstantiated- Included in the affidavit. Your Honor, if I could, the unsubstantiated phrase in that statement is also not in the record. There's no factual evidence for that. There is, Mr., Detective Ramos does acknowledge that there was a prior allegation, but there's no cases in the record to say that it's unsubstantiated. We do not, there is no record evidence at all about what happened with that prior allegation. We don't know whether it was prosecuted. We don't know whether it was not prosecuted, and we don't know the whys of which to be a myriad of information. So it does not per se make it that she has a prior finding of lack of credibility or trustworthiness. So I don't believe that that information would have harmed any other form of corroboration. It was virtually impossible in this fact scenario where you have the predator is the father or stepfather of the children in the house. And we have replete to this case evidence that none of the adults that NF approached offered protection to her. There was, or to her stepsister. There is the cousin told, the cousin first told her to keep it quiet. The cousin told an aunt, an uncle, and a grandparent, all of whom did nothing. The father told her the lie. The stepmother took no action. There was no place for this child to go back to the police. And there was no method by which the police could confirm whether she had legitimately found the child pornography in this house without creating a circumstance where it would have been destroyed. So in this circumstance where you haven't, as we know, after the fact, a very ongoing crime, this defendant was viewing this pornography as recently within hours, or even frankly, within hours of the search, and certainly within days of the search. He was on multiple occasions on these computers viewing this pornography on an ongoing basis. You had a circumstance in which the police officers moved as quickly as they could to take control and protection of these materials out of the hands of this repeated offender. As to a question of recklessness, I think that you will find, Your Honors, that if we look not just at the admissions that the defense wants to raise, but if we were to impute to Mr. Detective Ramos everything that Detective Edwards knew and put all of what was known in the affidavit that the defense's argument should have been, there would have been included in that affidavit that the defendant was visible in images, that he could be heard directing the minor to engage in particularized sexual behaviors. We would have had in that affidavit as well that the date of the video to establish that this offense had happened as far back as 2015 and 16, and we would have had the assault on the witness herself. All of the assault on the victim, excuse me, on the not-victim herself, obviously is a two-edged sword, to use Judge Marcus's words, because it creates both a bias and it creates a much higher risk and more volatile crime, being that it's now prepubescent child assault, not just child assault. So the omissions were not reckless. If Mr. Ramos or Detective Ramos was attempting to incorporate or represent to be incorporated everything that was known from Detective Edwards, all of these additional factors would have also been within that search warrant and would have plainly only increased the value of the information in the search warrant. If there are no other questions about the search warrant issues, Your Honor, I will address briefly the Constructive Amendment. Okay, you may. As to the Constructive Amendment, the law is beyond well-established in this country and in this circuit that prosecutors are allowed to plead in the conjunctive and prove in the disjunctive. This has been the case since 1895 in the Supreme Court Court for Justice in U.S. v. Train. In a thorough opinion in 1985, the Supreme Court U.S. v. Miller addressed it again. This court, in two recent opinions, one in, or fairly recent opinions, one in 2013 in Patchouli, P-A-C-C-H-O-I-L-I. Sorry, my pronunciation is awful. Specifically found that the prosecution can charge multiple acts but only needed to prove one of them. And then in U.S. v. Howard in 2014, this court found that such prosecutorial methodology was constitutional. This court has also found in U.S. v. Haley, H-A-I-L-E, in 2012, that surpluses may be struck to prevent a jury from having confusion if the language being struck is unnecessary to prove one of the charges. Based on this panoply of case law that is well-settled and extensive in this circuit, striking from charging employee use, entice, persuade, course, and I'm missing one of the top six words, Your Honor. I apologize. But charging those six terms in an or fashion, in an and fashion in the indictment, was not improper. The statute lists them as or. So there is no question that this could be statutory parameters to then put the jury instructions within an or context. The only evidence proven at trial at all was about use. There is no requirement within the statute that all of the other five methodologies required some element of coercion, which is what defense is trying to see. And that is particularly true given that this court's law is well-settled, and that the consent of the minor instruction that was given is entirely a correct statement of the law. A minor cannot consent to this kind of conduct, even if the minor, quote, willingly participated in that. It cannot- Counsel, two minutes, two minutes, counsel. Thank you. I appreciate it. In addition to the secondary offense, the statute is very clear that there are multiple methodologies of proving the interstate connection. And the statute, as the U.S. 2252 in Section 4B, literally has a comma, and then it reads, it set forth the interstate commerce provision of images moving in interstate commerce, and then has a comma, or which was produced using materials which had been mailed or so shipped in interstate commerce. It is plain that there are multiple methodologies of establishing the interstate commerce. In the statute, the same constructive amendment argument of conjunctive and disjunctive pleadings apply in this case as well. The government filed pleadings letting people know that this is, they were going to make this election as they went through, and it was an entirely correct election for the government to make. There's neither anything improper in any form in choosing to do any one of the two prongs of interstate commerce. If there are no other questions from this court, we would rest on our briefs and ask that you affirm. Thank you, Ms. Hoffman. I think we have the government's argument, and we'll hear from Ms. Breisbulg.  Yes, thank you, Your Honor. I want to just respond to a couple of points that the government made regarding the distinctions from redeeming. First of all, this court held in Ortega v. Christian that the mere fact that a defendant could be subject to self-incrimination is not sufficient to render them credible. And that case is actually pretty similar here as a matter of federal law of finding no probable cause to make an arrest. A statement against penal interest without more is not sufficient. There was no evidence that the informant had any past history with the police, and they took no independent steps to investigate or have any corroborated evidence. The distinction between Ortega and our case is that there was no basis of knowledge in the affidavit in that case, where here we do, we have this detailed statement showing that she lived in the house and knew this information. But again, there's nothing to suggest that makes it credible. The government said that there was a factual misstatement in the affidavit. I did note in the brief, the statement that it had only happened once was actually in the affidavit. That was something that the magistrate got wrong. And in fact, going back to the first argument in my initial brief, the district court parroted it when going over the R&R. She parroted that mistake as well so that she did not catch it. She did not catch it either. And I did not argue in opening the fact that there was no de novo review, but I did find that point relevant to that argument. There were additional facts though as well, including that Mr. Finley had told his daughter that he had deleted some of the videos. And of course, the fact that the picture on the iPhone had been destroyed. I find it very telling that the government is arguing that the government, that the detectives couldn't investigate for fear of Mr. Finley destroying evidence, while at the same time arguing that this evidence wasn't stale because the evidence can't be destroyed. What we know from the evidence that came out at trial, and I believe this is around page 48 of my brief, is that these assumptions that the magistrate relied on to believe this evidence could never be destroyed were absolutely wrong. The external hard drives have different mechanisms than internal drives and iPhones you can permanently delete pictures from. The one person who knew that information and could have educated the magistrate on it was Detective Ramos. He was a certified examiner of computers and cell phones, and he chose to keep that information to himself and allow the judge to find probable cause based on these unstated mechanisms that weren't even true. I haven't been doing a very good job of keeping my time here. I know the government did not hear my constructive amendment arguments, but I wanted just to make sure if there were no questions that the court did not misunderstand my arguments on those. Finally, the R&R made no finding with respect to whether or not the omission was knowing involuntary because the court, the magistrate, found that the fight wasn't material. The magistrate found actually that all of these statements... Time is expired. Time is expired. Thank you. If I may just finish. The magistrate found that... Thank you, Your Honor. The magistrate found that these factors weren't material, and so although he did credit Detective Ramos' testimony, he made no specific finding regarding whether they were knowingly and voluntarily made. Defense counsel did submit a specific objection at the last page of his objection to the R&R to the finding that the omissions were neither reckless nor voluntary, and the district court didn't make a clear ruling on them either. So we would ask either that the evidence be suppressed entirely or that the case be sent back for a finding of whether or not Detective Ramos acted knowing or with reckless disregard to the truth or falsity of the affidavit. Thank you. All right. Thank you, Ms. Dreisfeld and Ms. Hoffman, and we'll take the matter under advisement. And I believe that completes our arguments this morning. Court will be in recess until 9 o'clock tomorrow morning. Court's in recess.